UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GENERAL STEEL DOMESTIC
SALES, LLC, dba GENERAL
STEEL CORPORATION,

NO. CIV. S-06-411 LKK/KJM

      Plaintiff,

   v.                         O R D E R

JOHN W. SUTHERS, et al.,

      Defendants.
_____/

    Plaintiff General Steel Domestic Sales, LLC ("General Steel") alleges that defendants conspired together in violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, to ruin plaintiff's business and force defendant government agencies to prosecute plaintiff for false consumer law violations, and violated plaintiff's civil rights under 42 U.S.C. § 1983.  As a result, plaintiff alleges loss of business and seeks $500,000 in compensatory damages and $500,000 in punitive damages against each individual defendant.

1

1     General Steel has named some sixty defendants, including
2   individuals from the Colorado Attorney General's Office ("Colorado
3   AG"), the Sacramento County District Attorney's Office ("Sacramento
4   defendants"), and the New Mexico Attorney General's Office ("New
5   Mexico AG"); the Denver/Boulder Better Business Bureau, its
6   individual board of directors, and the corporate Better Business
7   Bureau office (collectively, "BBB"); Gannett Co. TV station and its
8   reporter Chip Yost ("Gannett"); Steelwise LLC and several of its
9   employees ("Steelwise"); and finally General Steel customers Dana
10  Beers, Sue Beers and Kirk Jarvis (collectively, "Nebraska
11  defendants").
12     Pending before the court are three motions: the Nebraska
13  defendants and Steelwise each have filed motions to dismiss for
14  lack of personal jurisdiction,[1] and BBB has filed a motion to stay
15  under either the Colorado River or Younger abstention doctrines,
16  in which Gannett has joined.  The court resolves the matter on the
17  parties' papers and after oral argument.  For the reasons set forth
18  below, the court grants the motion to dismiss with respect to the
19  Nebraska defendants and Steelwise, and stays the remainder of the
20  case.

21                        **I. Background**
22     The crux of plaintiff's complaint is that defendants allegedly
23  conspired together to create the false impression that General
24  Steel, which is in the business of selling steel buildings, was
25  ──────────────
26       [1] Defendants request that their motion to dismiss be heard
    prior to the motion to stay.

1  violating consumer protection laws and engaging in unfair business
2  practices and illegal advertising.   According to General Steel,
3  this conspiracy led to its prosecution in various civil actions and
4  injured General Steel's business and reputation.

5      The relevant facts for purposes of the motion to stay pending
6  before the court concern prior ongoing litigation.   Specifically,
7  some of the defendants in this case have either initiated suit
8  against General Steel in state court, or have already previously
9  been sued by General Steel in state court.   First, both the
10  Sacramento defendants and the Colorado AG's office have pending
11  suits against General Steel.[2]   The Sacramento defendants currently
12  have a quasi-criminal action against plaintiff pending in
13  California Superior Court based on alleged violations of consumer
14  protection and unfair business practice laws.   People of the State
15  of California v. General Steel Domestic Sales LLC, et al., 05-AS-
16  03689.   In addition, the Colorado AG's office sued General Steel
17  and a number of its employees in Colorado state court in 2004.
18  Colorado v. General Steel, et al., 2004-CV-143.   The litigation

19  _____

20      [2]  Based on the status report filed on February 5, 2007, and
    representations made to the court at oral argument, it appears that
21  the Colorado AG's suit has settled or is in the final steps of
    settlement.  As part of that settlement, defendant is obligated to
22  dismiss all the public entity defendants, including the only
    California residents in this case (i.e., the Sacramento
23  defendants).   However, given that the parties have twice
    represented to the court that they were about to settle --
24  prompting the court to twice continue the hearings on the pending
    motions -- the court will not presume that this will occur.
25  Moreover, BBB has requested that the court adjudicate its motion
    despite the potential dismissal of the public entity defendants,
26  given that its motion has been languishing since April 2006.

1  concerns allegations that General Steel violated the Colorado

2  Consumer Protection Act in connection with its sale of steel

3  buildings to consumers throughout the United States.[3]

4      Second, General Steel has filed two actions in Colorado state

5  court.  The BBB and its employees Jean Herman and Matt Fehling are

6  presently defendants in a pending state court action initiated by

7  General Steel in Colorado district court in 2004.[4]  General Steel

8  Domestic Sales LLC v. Denver/Boulder BBB, Jean Herman, and Matt

9  Fehling, 2004-CV-155.  The state court action has been stayed

10 pending the outcome of the Colorado AG's case against General

11 Steel.  In addition, General Steel is also litigating in Colorado

12 district court against Steelwise LLC and various former General

13 Steel employees.  General Steel Domestic Sales LLC v. Donahue et

14 al., 2004-CV-9181.

15                          **II. Standard**

16 **Motion to Dismiss for Lack of Personal Jurisdiction**

17     When a defendant challenges the sufficiency of personal

18 jurisdiction, the plaintiff bears the burden of establishing that

19 the exercise of jurisdiction is proper.  Sinatra v. National

20 Enquirer, Inc., 854 F.2d 1191, 1194 (9th Cir. 1988).

21     Analysis of the appropriateness of the court's personal

22

23     [3] Following an eight-day bench trial, the court in the
   Colorado AG's case found in December 2004 that General Steel had
24 engaged in an elaborate scheme of consumer fraud and made false
   representations as to their goods and services.
25
     [4] The individual BBB board members named in this federal
26 action were not previously named in the state action.

                              4

1  jurisdiction over a defendant in a case in which the court

2  exercises diversity jurisdiction is resolved under California's

3  long arm statute. Aanestad v. Beech Aircraft Corp., 521 F.2d 1298,

4  1300 (9th Cir. 1974). The statute authorizes the court to exercise

5  personal jurisdiction on any basis consistent with the due process

6  clause of the United States Constitution. Cal. Code Civ. Proc. §

7  410.10; Rocke v. Canadian Auto Sport Club, 660 F.2d 395, 398 (9th

8  Cir. 1981).

9       Consistent with the due process clause, the court may exercise

10 personal jurisdiction over a defendant when the defendant has

11 certain minimum contacts with the forum state such that the

12 maintenance of the suit does not offend traditional notions of fair

13 play and substantial justice. Int'l Shoe Co. v. Washington, 326

14 U.S. 310, 316 (1945). If the defendant is domiciled in the forum

15 state, or if the defendant's activities there are "substantial,

16 continuous and systematic," a federal court can exercise general

17 personal jurisdiction as to any cause of action involving the

18 defendant, even if unrelated to the defendant's activities within

19 the state. Perkins v. Benguet Consolidated Mining Co., 342 U.S.

20 437 (1952); Data Disc, Inc. v. Systems Technology Assoc., Inc., 557

21 F.2d 1280, 1287 (9th Cir. 1977).

22      If a non-resident defendant's contacts with California are not

23 sufficiently continuous or systematic to give rise to general

24 personal jurisdiction, the defendant may still be subject to

25 specific personal jurisdiction on claims arising out of defendant's

26 contacts with the forum state. Burger King Corp. v. Rudzewicz, 471

1  U.S. 462, 477-78 (1985); Haisten v. Grass Valley Medical

2  Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).

3      The court employs a three-part test to determine whether the

4  exercise of specific jurisdiction comports with constitutional

5  principles of due process. See Schwarzenegger v. Fred Martin Motor

6  Co., 374 F.3d 797, 802 (9th Cir. 2004). First, specific

7  jurisdiction requires a showing that the out-of-state defendant

8  purposefully directed its activities toward residents of the forum

9  state or purposefully availed itself of the privilege of conducting

10 activities in the forum state, thus invoking the benefits and

11 protections of its laws. Burger King, 471 U.S. at 474-75. Second,

12 the controversy must be related to or arise out of defendant's

13 contact with the forum. Ziegler v. Indian River County, 64 F.3d

14 470, 473 (9th Cir. 1995). Third, the exercise of jurisdiction must

15 comport with fair play and substantial justice, i.e., it must be

16 reasonable. Haisten, 784 F.2d at 1397.

17                        **III. Analysis**

18 **A. Motions to Dismiss for Lack of Personal Jurisdiction**

19      Steelwise and the Nebraska defendants have filed a motion to

20 dismiss for lack of personal jurisdiction, which primarily

21 addresses whether jurisdiction is proper in light of RICO. General

22 Steel maintains that personal jurisdiction is premised upon four

23 grounds: (1) RICO, (2) pendant personal jurisdiction, (3) the

24 conspiracy theory of jurisdiction, and, at least with respect to

25 Steelwise, (4) California's long-arm statute. For the reasons set

26 forth below, the court finds that plaintiff has failed to establish

personal jurisdiction under any of these grounds.

### 1. Personal Jurisdiction Under RICO

First, plaintiff argues that personal jurisdiction is proper under RICO.  18 U.S.C. § 1962.  A federal court may exercise personal jurisdiction in a civil RICO case pursuant to § 1965(b), which provides that:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

"Congress intended the 'ends of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc. ("Butcher's Union"), 788 F.2d 535, 539 (9th Cir. 1986).  The fatal flaw with plaintiff's position is that it has not sufficiently alleged a single nationwide conspiracy involving Steelwise or the Nebraska defendants.

It is well-established that "the right to nationwide service in RICO suits is not unlimited." Id. at 539.  Thus, for instance, the act of "merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." Id.  Rather, the complaint must reveal factual allegations supporting the existence of a single nationwide conspiracy.  The facts of Butcher's Union are instructive on the

1   limits of nationwide service.  In that case, it was this very court
2   that initially held that jurisdiction under RICO was improper.  The
3   plaintiffs in that case maintained that there was a nationwide
4   conspiracy of "union-busting" among four separate employers that
5   was carried out by their lawyers.  Id. at 537.  The plaintiffs
6   conceded, however, that the defendant employers had no connection
7   with each other beyond the use of the same lawyers, and that each
8   individual conspiracy was largely independent.  Id. at 536.

9        Accordingly, this court held that the plaintiffs had failed
10  to allege a nationwide pattern of racketeering activity in which
11  the four defendant employees were participants.  Specifically, the
12  plaintiffs failed to allege that the defendants had "specific
13  knowledge of or participation in any of the other conspiracies."
14  Id. at 539.  This led "inexorably to the conclusion that this
15  'case' is in fact four separate cases each involving an independent
16  conspiracy."  Id. at 538.  As such, there was only jurisdiction
17  over the conspiracy centered around the California-based defendant
18  employer.  Id.

19       Similarly, here, plaintiff has failed to allege a single
20  nationwide conspiracy.  Its conclusory statement to the contrary
21  wholly fails to satisfy plaintiff's burden of proving that personal
22  jurisdiction is proper.  The crux of the allegations against
23  Steelwise is that Steelwise stole proprietary information and
24  turned it over to the Colorado AG.  There is no allegation that
25  Steelwise consented to a larger agreement implicating individuals
26  in California or the multitude of other defendants in this case

1  (e.g., the Nebraska defendants).  While General Steel points out

2  that "[a] formal agreement is not necessary," <u>United States v.</u>

3  <u>Frega</u>, 179 F.3d 793, 893 (9th Cir. 1998), that does not change the

4  requirement that the defendant at least "was aware of the essential

5  nature and scope of the enterprise and intended to participate in

6  it," <u>Baumer v. Pachl</u>, 8 F.3d 1341, 1346 (9th Cir. 1993).  Because

7  General Steel has made no such showing, RICO does not provide a

8  basis for jurisdiction over Steelwise.

9       For substantially similar reasons, RICO does not provide for

10 personal jurisdiction over the Nebraska defendants.   The main

11 allegation against the Nebraska defendants, who were former

12 customers of General Steel, is that they provided false information

13 to the Colorado AG.   FAC ¶ 124-27.  Specifically, according to

14 General Steel, when the Nebraska defendants were unable to obtain

15 a return of deposits paid to General Steel for the purchase of a

16 steel building, they falsely informed the Colorado AG of General

17 Steel's deceptive trade practices.   <u>Id.</u> Again, however, there is

18 no allegation linking the Nebraska defendants with any individual

19 in California, such as the Sacramento defendants.   Accordingly,

20 General Steel has failed to allege the existence of a single

21 nationwide conspiracy that encompasses the Nebraska defendants.

22      **2. Pendant Personal Jurisdiction**

23      General Steel also argues that jurisdiction is proper under

24 "pendant personal jurisdiction."  This doctrine provides that "a

25 court may assert pendent personal jurisdiction over a defendant

26 with respect to a claim for which there is no independent basis of

9

1   personal jurisdiction so long as it arises out of a common nucleus

2   of operative facts with a claim in the same suit over which the

3   court does have personal jurisdiction." Action Embroidery Corp.

4   v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004).

5   The doctrine is typically applied where a federal claim for which

6   there is nationwide personal jurisdiction is combined with other

7   claims for which there is not nationwide personal jurisdiction.

8   Id. at 1180-81.

9        General Steel asserts that because personal jurisdiction over

10  the various defendants is proper under RICO, its § 1983 claims may

11  now be brought under the pendant personal jurisdiction doctrine.

12  Given that the court has found that RICO cannot provide a basis for

13  jurisdiction with respect to Steelwise or the Nebraska defendants,

14  pendant jurisdiction over these additional claims is similarly

15  lacking.

16  **3. Conspiracy Theory of Jurisdiction**

17       Alternately, plaintiff contends that personal jurisdiction may

18  be exercised over Steelwise and the Nebraska defendants under a

19  conspiracy theory of jurisdiction. Under this theory, when one co-

20  conspirator is subject to personal jurisdiction in a particular

21  forum, then all of the other co-conspirators are possibly subject

22  to personal jurisdiction in that forum. As an initial matter, the

23  court finds that plaintiff has failed to allege a conspiracy with

24  respect to all defendants and the theory is therefore inapplicable

25  on this basis alone.

26       Furthermore, the validity of conspiracy theory of jurisdiction

10

1  in this circuit is in doubt.[5]  In Piedmont Label Co. v. Sun Garden

2  Packing Co., 598 F.2d 491 (9th Cir. 1979), the Ninth Circuit

3  expressly rejected "any implication . . . that members of a

4  conspiracy, as agents of one another, 'transact business' for venue

5  purposes in any district where one of them transacts business."

6  Id. at 492.  The court again had the opportunity to adopt the

7  theory in Underwager v. Channel 9 Australia, 69 F. 3d 361 (9th Cir.

8  1995), but it did not reach the merits of the theory because the

9  plaintiff there had failed to sufficiently allege conspiracy.

10  Similarly, the court sees no reason to adopt it now.

11      **4. California's Long-Arm Statute**

12      General Steel also maintains that personal jurisdiction is

13  proper with respect to Steelwise under California's long-arm

14  statute.[6]  The pertinent facts here are straightforward.   The

15  Steelwise defendants are former employees of General Steel.  After

16  leaving General Steel and founding Steelwise, a dispute arose over

17  the alleged theft of trade secrets and confidential proprietary

18  data, which were turned over to the Colorado AG, who then gave the

19  information to the Sacramento DA.   Steelwise also maintains a

20

21      [5] Other courts faced with the theory have come to divergent
conclusions.  Compare Davis v. A & J Electronics, 792 F.2d 74, 75-
22  76 (7th Cir. 1986) (declining to adopt theory), Kipperman v.
McCone, 422 F. Supp. 860, 873 (N.D. Cal. 1976) (same), and
23  California Clippers, Inc. v. United States S. F. Ass'n, 314 F.
Supp. 1057, 1066-67 & n.5 (N.D. Cal. 1970) (same) with Second
24  Amendment Foundation v. U.S. Conference of Mayors, 274 F.3d 521,
524 (D.C. Cir. 2001) (adopting theory).

25

26      [6] Plaintiff does not contend that there is general or specific
jurisdiction with respect to the Nebraska defendants.

website used for advertisement and the sale of steel buildings over the internet.

### A. Specific Jurisdiction

First, General Steel argues that specific jurisdiction exists in this case. In analyzing a claim of specific jurisdiction, there must be purposeful availment by the defendant of the forum state; the claim must arise out of the forum-related activities; and the exercise of jurisdiction must be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The purposeful direction of activities at a forum state alone can justify a finding of purposeful availment. Id. at 803. The test for purposeful direction requires that the defendant (1) commit an intentional act that is (2) expressly aimed at the forum state and that (3) causes harm that the defendant knows is likely to be suffered in the forum state. Id. at 802.

Here, plaintiff alleges that Steelwise engaged in two forms of purposeful direction of activities at California. Pl.'s Opp'n 13:26-14:13. First, Steelwise is alleged to have provided information stolen from plaintiff to the Sacramento DA. This was allegedly done in order to hurt plaintiff's business in California, and caused harm in California. Second, Steelwise maintains a website advertising its products that can be accessed by California residents. The court disagrees that either of these activities constitutes purposeful direction

Under the purposeful direction test, the intentional act committed by defendant must be "expressly aimed at the forum

1  state." By plaintiff's own allegations, however, Steelwise has not

2  engaged in such conduct.  Plaintiff alleges that Steelwise obtained

3  stolen data and provided it to the Colorado AG.  The Colorado AG

4  then provided same information to the Sacramento DA. Regardless of

5  whom eventually gained access to the information, defendant's

6  conduct involved only the Colorado AG.  This conduct was not

7  expressly aimed at California and is not sufficient to constitute

8  purposefully directed activity.

9       Also unavailing is the fact that Steelwise operates a website

10 accessible to California residents.  For specific jurisdiction to

11 attach, it must be determined that "but for" a defendant's forum-

12 related activities, the plaintiff would not have suffered injury.

13 <u>Callaway Golf Corp v. Royal Canadian Golf Assoc.</u>, 125 F. Supp. 2d

14 1194, 1204 (C.D. Cal. 2000).  Plaintiff alleges that Steelwise's

15 website is "evidence of motive for" and "closely related to"

16 conspiracy to harm plaintiff's business.  Pl.'s Opp'n at 15.  This

17 wholly fails to demonstrate how Steelwise's website gave rise to

18 the current suit.  Accordingly, these allegations are insufficient

19 to meet the "but for" test necessary for this court to exercise

20 specific jurisdiction.

21          **B. General Jurisdiction**

22      Second, plaintiff maintains that Steelwise's website also

23 constitutes sufficiently continuous and systematic contacts with

24 California to confer general jurisdiction.  General jurisdiction

25 exists if the non-resident's contacts with the forum are continuous

26 and systematic, and the exercise of jurisdiction satisfies

13

1  "traditional notions of fair play and substantial justice." Reebok

2  Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1391 (9th Cir. 1995).  "The

3  standard for establishing general jurisdiction is fairly high and

4  requires that the defendant's contacts be of the sort that

5  approximate physical presence." Bancroft & Masters, Inc. v.

6  Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000), citing

7  Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986); Gates

8  Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984).

9       Plaintiff has neither alleged nor demonstrated sufficient

10 facts to show that Steelwise's internet presence approximates

11 physical presence.  Significantly, there is no evidence that

12 Steelwise targets California customers.[7]  See Bancroft, 223 F.3d

13 at 1086 (finding no general jurisdiction where defendant did not

14 target advertising toward California).  Similarly, there is no

15 evidence as to the volume or frequency of business that Steelwise

16 transacts with California.  See Gates Learjet, 743 F.2d at 1331.

17 And even assuming, arguendo, that Steelwise maintains an

18 interactive website (as opposed to a passive one), this would not

19 be enough, without more, to confer general jurisdiction.  See

20 Millenium Enterprises, Inc. v. Millenium Music, LLP, 33 F. Supp.

21 2d 907, 920 (D. Or. 1999) (finding no general jurisdiction where

22 "defendants have done nothing more than publish an interactive Web

23 site").

24 _____

25      [7] Plaintiff merely asserts, ipse dixit, that Steelwise's
   "Internet advertising for sale of its pre-engineered buildings [is]
26 directed at California residents . . ."  Pl.'s Opp'n at 15.

1    In any event, the only legal authority cited by plaintiff
2  speaks to internet commerce creating specific, rather than general,
3  jurisdiction.  See, e.g., Stomp, Inc. v. NeatO, LLC, 61 F. Supp.
4  2d 1074, 1077 (C.D. Cal. 1999) ("Since the assertion of specific
5  jurisdiction requires a lower threshold of contacts than does
6  general jurisdiction, the Court addresses only the issue of whether
7  it can assert specific jurisdiction . . .").  In short, plaintiff
8  has wholly failed to meet its burden of proving that the exercise
9  of jurisdiction is proper.

10  **B. Motion to Stay**

11    BBB has filed a motion to stay under either the Younger or
12  Colorado River abstention doctrines.  Because the court finds that
13  abstention is proper under Younger for the reasons set forth below,
14  it need not address whether abstention under Colorado River is
15  warranted.

16    The Younger abstention doctrine provides that federal courts
17  should not interfere with pending state proceedings under certain
18  circumstances.  Younger v. Harris, 401 U.S. 37, 46 (1971).
19  Although Younger originated in the context of a request to enjoin
20  a pending criminal prosecution, it has been extended to encompass
21  proceedings in the civil context, Huffman v. Pursue, Ltd., 420 U.S.
22  592, 607 (1975), and requests for declaratory relief, Samuels v.
23  Mackell, 401 U.S. 66, 72 (1971).

24    The doctrine is animated by concerns of comity, federalism,
25  and equity.  Younger, 401 U.S. at 43-44.  Moreover, "[w]hen a case
26  falls within the proscription of Younger, a district court must

1    dismiss [or stay] the federal action." <u>Fresh Int'l Corp. v.</u>

2    <u>Agricultural Labor Relations Bd.</u>, 805 F.2d 1353, 1356 (9th Cir.

3    1986). This is true despite the "virtually unflagging obligation

4    of federal courts to exercise the jurisdiction given to them."

5    <u>Smith v. Central Ariz. Water Conservation Dist.</u>, 418 F.3d 1028,

6    1033 (9th Cir. 2005) (internal quotation marks omitted).

7    **1. <u>Middlesex</u> Test**

8    <u>Younger</u> abstention is appropriate when the three requirements

9    of the <u>Middlesex</u> test are satisfied: (1) there must be ongoing

10    state judicial proceedings, (2) the proceedings must implicate

11    important state interests, and (3) there must be an adequate

12    opportunity in the state proceedings to raise federal questions.

13    <u>Middlesex County Ethics Committee v. Garden State Bar Ass'n</u>, 457

14    U.S. 423, 432 (1982); <u>Delta Dental Plan of Cal., Inc. V. Mendoza</u>,

15    139 F.3d 1289, 1294 (9th Cir. 1998). The first two requirements

16    address the concerns of comity and federalism, while the last

17    requirement addresses the concern of equity. While all three

18    concerns are important, "comity is the main reason for federal

19    court restraint in the face of ongoing state judicial proceedings."

20    <u>Gilbertson v. Albright</u>, 381 F.3d 965, 975 (9th Cir. 2004).

21    **a. Ongoing State Proceedings**

22    Here, the first element of the <u>Middlesex</u> test is satisfied.

23    The dispositive issue is whether the state proceedings were

24    underway prior to initiation of the federal proceedings. <u>Wiener</u>

25    <u>v. County of San Diego</u>, 23 F.3d 263, 266 (9th Cir. 1994). At the

26    time that General Steel filed the present lawsuit, it was already

1  the defendant in two ongoing state court actions: one filed by the
2  Colorado AG's office and another filed by the Sacramento DA's
3  office.   Furthermore, General Steel's suit against the BBB in
4  Colorado district court, filed in 2004, was initiated prior to the
5  present suit.   Accordingly, the first prong of the Middlesex test
6  is satisfied.

7                    **b. Important State Interests**

8          The second requirement of the Middlesex test, that there be
9  important state interests implicated, is also met. "The importance
10 of the interest is measured by considering its significance
11 broadly, rather than focusing on the state's interest in the
12 resolution of an individual case." Baffert v. Cal. Horse Racing
13 Bd., 332 F.3d 613, 618 (9th Cir. 2003).   The pending state cases
14 clearly implicate important state interests, and General Steel does
15 not seriously dispute otherwise. See Williams v. Washington, 554
16 F.2d 369, 370 (9th Cir. 1977) (abstaining under Younger because the
17 state's interest in prosecuting a consumer protection law was an
18 important governmental interest).

19         Here, the Colorado AG action is enforcing the Colorado
20 Consumer Protection Act, a remedial statute that protects consumers
21 from consumer fraud and ensures fair competition. As the Colorado
22 Supreme Court noted, the statute was "clearly enacted to control
23 various deceptive trade practices in dealing with the public and
24 as such is obviously designed to both declare and enforce an
25 important public policy." People ex rel. Dunbar v. Gym of America,
26 493 P.2d 660, 665 (Colo. 1975).   Likewise, the law being enforced

1   by the Sacramento DA addresses the important state interest of
2   prohibiting unfair business practices.  Indeed, the violation of
3   one of the statutes constitutes a misdemeanor.  Cal. Bus. &
4   Professions Code § 17500.  Finally, because the court in the action
5   against BBB ordered a stay of proceedings pending resolution of the
6   Colorado AG's case, allowing this suit to proceed would undermine
7   the important state interest of preventing circumvention of
8   judicial orders.  Thus, the court finds that the second prong of
9   the Middlesex test is met.

10                  **c. Adequate Opportunity to Raise Federal Claims**

11          The third prong of the Middlesex test is whether an adequate
12   opportunity exists to raise the federal claims in the ongoing state
13   court proceedings.  Notably, the issue is not whether General Steel
14   actually raised its federal claims in the state court proceedings.
15   Rather, the issue is whether it was afforded the opportunity to do
16   so.  See Gilbertson, 381 F.3d at 983 (holding that a party's
17   "failure to avail himself of the opportunity does not mean that the
18   state procedures are inadequate"); Dubinka v. Judges of Superior
19   Court, 23 F.3d 218, 224 (9th Cir. 1994) (finding the third prong
20   of the Middlesex test met because parties "had an adequate
21   opportunity to raise their constitutional challenges in the state
22   proceedings"); Lebbos v. Judges of Superior Court, 883 F.2d 810,
23   815 (9th Cir. 1989) (noting that the "pertinent inquiry is whether
24   the state proceedings afford an adequate opportunity to raise the
25   constitutional claims") (internal quotation marks omitted).

26          The burden rests with plaintiffs to show that they are

1  procedurally barred from raising their federal claims in the state

2  court proceedings.  Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14

3  (1987).   There is a presumption that state courts provide an

4  adequate forum for the adjudication of federal claims.  Id. at 15.

5  Moreover, with respect to the particular claims at issue, there is

6  no  dispute  that  state  and  federal  courts  have  concurrent

7  jurisdiction over RICO and § 1983 claims.  See Tafflin v. Levitt,

8  493  U.S.  455  (1990)  (concurrent  jurisdiction  over  civil  RICO

9  actions); Maine v. Thiboutot, 448 U.S. 1, 3 n.1 (1980) (concurrent

10  jurisdiction over § 1983 claims).

11                    **i. Colorado AG Suit**

12       General Steel argues that it could not have raised its federal

13  claims in the state court actions.  As an example, it points to the

14  allegation  that  the  Colorado  AG  and  Sacramento  DA  caused  a

15  manufacturer to cease doing business with General Steel via threats

16  and intimidation, which is purportedly cognizable under § 1983 but,

17  according to General Steel, could never have been raised in the

18  Colorado AG action.  As support, it cites the case of Genzler v.

19  Longanbach, 410 F.3d 630 (9th Cir. 2005), which held that absolute

20  immunity attaches to quasi-judicial activity, such as evaluating

21  evidence, but not to police-like activity, such as evidence

22  gathering.  This case does not appear relevant except to suggest,

23  albeit very obliquely, that the alleged misconduct of the Colorado

24  AG and Sacramento DA constitutes a different transaction or

25  occurrence than the one giving rise to the Colorado AG's case

26  against General Steel.

1    General Steel maintains that the applicable state rules of

2  civil procedure barred its federal claims.  As support, it recites

3  Rule 14(a) of the Colorado Rules of Civil Procedure, which limits

4  cross-claims made by the defendant to a "person not a party to the

5  action who is or may be liable to him for all or part of

6  plaintiff's claims against him."  Co. Rule Civ. P. 14(a).  In other

7  words, General Steel argues that even if the Colorado AG's office

8  engaged in unconstitutional conduct, this would not mean that the

9  AG would be liable for General Steel's violation of Colorado's

10  consumer protection law -- thereby foreclosing General Steel's

11  ability to raise its federal claims under Rule 14(a).

12    Plaintiff's argument ignores two critical considerations.

13  First, General Steel could have challenged the constitutionality

14  of the Colorado AG's actions in the state proceedings outside the

15  context of Rule 14(a).  Improper investigative techniques and

16  evidence gathering, for instance, can be litigated in opposition

17  to the admissibility of evidence.[8]  Indeed, General Steel in fact

18  did raise certain constitutional arguments in the state

19  proceedings, although these were rejected on the merits.  See

20  Nelson Decl., Ex. 5 (September 27, 2004 Order) at 2-7 (rejecting

21  due process claim based on Gore v. BMW).

22  _____

23    [8]  Admittedly, the relief available in such a context might
be the exclusion of evidence, rather than damages, as General Steel
has requested here.  Nevertheless, this distinction goes to the
24  issue of whether a stay versus a dismissal is appropriate, rather
than whether Younger abstention is appropriate in the first
25  instance.  See Gilbertson, 381 F.3d at 980 (noting that where
relief is not available in state proceedings for a damages action,
26  the proper course of action is to stay the federal action).

1    Second, there are other procedural options available to
2  General Steel.  Aside from impleading a third-party defendant,
3  plaintiffs may, and indeed must, assert any compulsory
4  counterclaims arising out of the same transaction or occurrence
5  that is the subject matter of the opposing party's claim.  Co. Rule
6  Civ. P. 13(a) ("A pleading <u>shall</u> state as a counterclaim any claim
7  . . . the pleader has against any opposing party, if it arises out
8  of the transaction or occurrence").   The purpose of the rule is
9  to avoid multiple lawsuits among the parties to a transaction or
10 occurrence.  <u>In re Estate of Kroitiuk</u>, 12 P.3d 302 (Colo. App.
11 2000).  Here, General Steel could have raised its federal claims
12 in the state suit under Rule 13(a).  For example, one of the
13 underlying claims in the present action against the Colorado AG is
14 that they wrongfully initiated suit based on false reports and
15 complaints.  These alleged acts plainly arise out of the same
16 transaction or occurrence that gave rise to the Colorado AG's suit.

17    Moreover, General Steel's initial reliance on Rule 13(a),
18 limiting the scope of cross-claims, is misplaced.  Rule 20(a)
19 allows permissive joinder of any third parties against whom there
20 is a right to relief arising out of the same transaction or
21 occurrence, or series of transactions or occurrences.  Co. Rule
22 Civ. P. 20(a).  Particularly in light of the liberal "series of
23 transactions or occurrences" language, it appears that General
24 Steel could have asserted its federal claims against the defendants
25 now seeking abstention.

26    In sum, General Steel has not met its burden of proving that,

1  under either Rule 13(a) or under Rule 20(a), it did not have the
2  opportunity to raise its federal claims against the defendants now
3  seeking abstention.

4                        **ii. Sacramento DA Suit**

5      In addition, General Steel has the opportunity to raise its
6  federal claims in the Sacramento DA's case. The claims against the
7  Sacramento DA in that case are similar to those against the
8  Colorado AG: they include, for instance, allegations that the
9  Sacramento DA wrongfully initiated suit based on false information.
10 As described above, however, these claims can be raised in the
11 state court proceedings.

12     Nevertheless, General Steel argues that because the underlying
13 claim in the Sacramento DA case was California's Unfair Competition
14 Law, which imposes strict liability, it could not implead a third-
15 party defendant. As support, it notes that Cal. Code Civ. P.
16 § 428.10(b) only permits the filing of a cross complaint against
17 anyone, whether a party to the action or not, where the cause of
18 action arises out of the same transaction, occurrence, or series
19 of transactions or occurrences as the underlying action.

20     Again, this argument is incomplete for the same reasons as
21 described above. First, General Steel again overlooks the fact
22 that, as in Colorado, a defendant in California may file any
23 counter-claim against the plaintiff, whether or not it arises out
24 of the same transaction or occurrence as the underlying action.
25 Cal. Code Civ. P. § 428.10(a). See, e.g., Kajima Eng'g Constr.,
26 Inc. v. City of Los Angeles, 95 Cal. App. 4th 921 (2002) (approving

                                   22

1  of a RICO counterclaim).

2      Second, it is doubtful that even under the rules for filing

3  a cross-complaint, General Steel's claims against the Sacramento

4  DA (or any of the other defendants, such as the BBB) would not

5  arise from the same "series of transactions or occurrences" giving

6  rise to the Sacramento DA's action in state court.  See, e.g.,

7  People v. Rath Packing Co., 85 Cal. App. 3d 308 (1978) (company

8  sued by district attorney filed counterclaim and cross-claim

9  against third party alleging violations of federal law, including

10  due process).

11     Again, General Steel has not met its burden of proving that

12  the state forum is inadequate, and certainly not by reference to

13  "unambiguous authority."  Baffert, 332 F.3d at 619 (holding that

14  the court "must assume that state procedures afford an adequate

15  remedy, in the absence of unambiguous authority to the contrary").

16                  **iii. Other State Court Actions**

17     Moreover, while General Steel focuses on why it allegedly

18  could not raise its federal claims in the two state-initiated

19  consumer protection actions, it tellingly avoids any real

20  discussion of why it could not have raised these claims in the

21  other two state court actions, which it initiated.  In addition,

22  General Steel has failed to refute the BBB's paragraph-by-paragraph

23  analysis explaining why each of the allegations in its federal

24  complaint parallel those already made in the four separate state

25  court proceedings.  Accordingly, the court finds that plaintiff

26  could have raised its federal claims through these state court

23

1  proceedings.

2      **2. Interference with State Proceedings**

3      Even if the three requirements of the Middlesex test are met,

4  General Steel urges the court to exercise jurisdiction because

5  doing so "would have no effect at all" on any of the pending state

6  court cases.   Pl.'s Opp'n at 16.   The requisite level of

7  interference required for Younger abstention is not altogether

8  clear, but the Ninth Circuit has retreated from its previous

9  position that "direct interference" is required.  Cf. Green v. City

10 of Tucson, 255 F.3d 1086 (9th Cir. 2001).  In Gilbertson, the court

11 clarified:

12         *If* a state-initiated proceeding is ongoing, and *if* it
           implicates important state interests (as refined by *NOPSI*),
13         and *if* the federal litigant is not barred from litigating
           federal constitutional issues in that proceeding, *then* a
14         federal court action that would enjoin the proceeding, or
           have the practical effect of doing so, would interfere in a
15         way that *Younger* disapproves.

16 255 F.3d at 978 (emphasis in original).  General Steel seizes upon

17 this last sentence and presses that federal court involvement in

18 the present case would neither enjoin pending state proceedings nor

19 have the practical effect of doing so.

20     Gilbertson undermines, rather than supports, General Steel's

21 position.  Gilbertson signaled an expansion of the types of federal

22 court intervention that were sufficiently intrusive to justify

23 application of Younger abstention.  Previously, Ninth Circuit law

24 held that Younger abstention was only appropriate in actions

25 seeking "to enjoin, declare invalid, or otherwise involve the

26 federal courts in terminating or truncating the state court

24

1   proceedings." <u>Green</u>, 255 F.3d at 1098.   <u>Gilbertson</u> clarified that

2   this requirement of "direct interference" had no basis in Supreme

3   Court precedent.   Instead, <u>Gilbertson</u> held that federal court

4   action having the same "practical effect" as an injunction

5   triggered application of the <u>Middlesex</u> test.

6       The "practical effect" of an injunction or declaratory relief

7   in the face of pending state proceedings is that:

8           It would frustrate the state's interest in
            administering its judicial system, cast a negative
9           light on the state court's ability to enforce
            constitutional principles, and put the federal court
10          in the position of prematurely or unnecessarily
            deciding a question of federal constitutional law.
11          Therefore, a determination if the federal plaintiff's
            constitutional rights were violated would be just as
12          intrusive as a declaratory judgment.

13  <u>Gilbertson</u>, 381 F.3d at 980.   This view is consistent with the most

14  important concern animating the <u>Younger</u> doctrine — that of comity.

15  <u>Id.</u> at 975.   Accordingly, the Ninth Circuit held that a suit for

16  purely damages under § 1983 had the same practical effect as an

17  injunction or declaratory relief.   <u>Id.</u> at 979.

18      Similarly, in the present case, even if federal court

19  involvement would not stop pending state proceedings in Colorado

20  and California, it would nevertheless cast aspersion on the

21  competence of these state courts to adjudicate plaintiff's federal

22  claims.   Indeed, so strong is this concern that whenever there is

23  some rational connection between the state court action and the

24  federal court damages suit, sufficient interference exists to

25  trigger the <u>Middlesex</u> test.   See <u>Gilbertson</u>, 381 F.3d at 980 n.14

26  (finding insufficient interference only where the underlying

1  federal claims are "wholly unrelated" to the issues in the pending

2  state proceeding).   Here, General Steel's federal claims are

3  intricately related to the claims made in state court. <u>See</u> Decl.

4  of Thomas Kelley ¶¶ 13-21.   Furthermore, as noted above, concerns

5  regarding comity are not alleviated simply when the federal

6  plaintiff chooses not to litigate its federal claim in state court

7  even though it could have done so.   A contrary rule would allow

8  plaintiffs to bypass <u>Younger</u> and federal court action would ratify

9  plaintiffs' circumvention.

10  **3. No Exception to <u>Younger</u> Applies**

11      Even where <u>Younger</u> is implicated, the court is not required

12  to abstain where (1) the state proceeding was motivated by bad

13  faith, (2) the challenged statute is flagrantly unconstitutional,

14  or (3) when exceptional circumstances are present. <u>Gilbertson</u>, 381

15  F.3d at 983; <u>Ohio Civil Rights Comm'n v. Dayton Christian Schs.</u>,

16  477 U.S. 619, 626 (1986).   General Steel argues that the first

17  exception applies, because the investigations culminating in the

18  Sacramento DA and Colorado AG actions were conducted in bad faith,

19  having as their "sole purpose [] to drive plaintiff out of business

20  and leave the 150 Colorado citizens employed by General Steel,

21  unemployed."   Pl.'s Opp'n at 20.

22      Bad faith "generally means that a prosecution has been brought

23  without a reasonable expectation of obtaining a valid conviction."

24  <u>Baffert</u>, 332 F.3d at 621 (citation omitted).   Here, the court in

25  the Colorado AG action has already found that General Steel was

26  liable for violating state consumer protection law in "Phase I" of

1  the lawsuit.  Accordingly, it cannot be said that there was no
2  reasonable expectation on the part of the Colorado AG in obtaining
3  a favorable ruling.  Moreover, as the Sacramento DA's action
4  concerns substantially similar claims, it also cannot be said that
5  the plaintiffs in that case have acted in bad faith.

6      **4. Stay v. Dismissal**

7      A final consideration is whether a stay or dismissal is
8  appropriate in this case.  In most cases, once it is determined
9  that <u>Younger</u> abstention applies, "dismissal (and only dismissal)
10 is appropriate." <u>Gilbertson</u>, 381 F.3d at 981.  However, when only
11 damages are sought, "it makes sense for the federal court to
12 refrain from exercising jurisdiction *temporarily* by staying its
13 hand until time as the state proceeding is no longer pending." <u>Id.</u>
14 This allows the plaintiff to pursue its federal claims in the state
15 proceedings while preserving its choice of forum with regard to
16 compensation.  Given that General Steel has only requested damages
17 in this case, a stay is appropriate.

18                    **IV. Conclusion**

19     For the reasons set forth above, the Nebraska defendants' and
20 Steelwise's motions to dismiss are GRANTED, and BBB's motion to
21 stay is GRANTED.

22     IT IS SO ORDERED.

23     DATED: March 2, 2007.

24

25                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
26                              UNITED STATES DISTRICT COURT

                                27